**UNITED STATES of America, Appellee,**

v.

**LAU TUNG LAM, a/k/a "Ah Tong," Defendant-Appellant.**

**No. 1183, Docket 82–1443.**

United States Court of Appeals, Second Circuit.

Argued April 26, 1983.

Decided July 26, 1983.

Certiorari Denied Oct. 31, 1983. See 104 S.Ct. 359.

Sylvia Peck, The Legal Aid Soc., Federal Defenders Unit, New York City, for defendant-appellant.

Mary Lee Warren, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty., Walter P. Loughlin, Asst. U.S. Atty., New York City, on brief), for appellee.

Before NEWMAN and PRATT, Circuit Judges, and METZNER, District Judge.*

NEWMAN, Circuit Judge:

Lau Tung Lam appeals from the December 14, 1982, judgment of the District Court for the Southern District of New York (Dudley B. Bonsal, Judge) convicting Lau, following a jury trial, of conspiracy to import and to possess heroin with intent to distribute, 21 U.S.C. §§ 846, 963 (1976), importation of heroin, *id.* § 952, and possession of heroin with intent to distribute, *id.* § 841(a)(1).[1] Lau contends that federal agents manufactured federal jurisdiction in order to prosecute him on federal charges; relying on *United States v. Archer,* 486 F.2d

---

* The Honorable Charles M. Metzner of the United States District Court for the Southern District of New York, sitting by designation.

1. Lau was sentenced to three concurrent terms of eight years to be followed by two concurrent terms of three years of special parole.

670 (2d Cir.1973), he seeks dismissal of the indictment. We do not believe *Archer* governs this case, and we affirm Lau's conviction.

Lau's initial contact with Government agents occurred on board a European train when he met Isabelle Leriche, a paid informant of the Drug Enforcement Administration (DEA). Several months later, Lau ran into Leriche in a Paris cafe and, in the course of casual conversation, asked her if she knew any heroin buyers. Leriche said that she did, and eventually introduced Lau to an undercover DEA agent, who offered to buy 5–10 kilograms of high-quality heroin each month for delivery in New York City. Up to this point, Lau had expressed an interest in selling heroin only in Europe. After some hesitation, Lau agreed to deliver his heroin to the DEA agent in New York. With the assistance of Leriche and cooperating American officials, Lau received a visa to enter the United States. Lau was arrested by federal agents when he and Leriche arrived in New York with the first shipment of heroin.

Lau does not argue that federal authorities violated his due process rights, nor does he dispute that the prosecution's evidence of his predisposition was sufficient to permit the jury to reject his defense of entrapment. His sole claim is that this Court should exercise its supervisory authority over the administration of federal criminal justice by dismissing the indictment. *See McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). According to appellant, the Government's actions in this case deserve condemnation because "no crime would have existed in this country but for the conduct of the Government's agents who themselves created the federal nexus which permitted prosecution." Brief for Appellant at 24–25.

Recent cases in the Supreme Court and this Circuit have established that the federal judiciary's supervisory powers over prosecutorial activities that take place outside the courthouse is extremely limited, if it exists at all. *See United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *United States v. Myers,* 692 F.2d 823, 847 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983). Whatever the occasion for the exercise of such power might be, it is not remotely implicated by the facts of this case. The Government has an entirely legitimate interest in identifying and apprehending European drug dealers willing to bring narcotics to this country for sale. *Cf. United States v. Gambino,* 566 F.2d 414, 418–19 (2d Cir.) (legitimate federal interest in apprehending garbage collection racketeers by using undercover agents to establish business involving interstate commerce), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978). It is no cause for complaint that an undercover federal agent inquires whether a drug dealer, already distributing in France, Holland, and Germany, is interested in selling in the United States, nor that the agent assists a willing drug seller to come here. *See United States v. Corcione,* 592 F.2d 111 (2d Cir.), *cert. denied,* 440 U.S. 975, 985, 99 S.Ct. 1585, 1801, 59 L.Ed.2d 974, 60 L.Ed.2d 248 (1979).

The carefully limited holding in *United States v. Archer, supra,* is of no aid to appellant in this case. In *Archer* a conviction under the so-called "Travel Act," 18 U.S.C. § 1952 (1976), was reversed because "the use of interstate and foreign telephone facilities ... did not suffice to bring the defendants within" the Act. 486 F.2d at 683 (denying petition for rehearing). The deficiency arose from the fact that the three calls relied upon by the prosecution were "from or to a federal agent." *Id.* at 684. The decision, as clarified on petition for rehearing, questioned, but stopped short of deciding, whether telephone calls by a federal agent could ever supply the jurisdictional element required by the Travel Act. The Court "left open the possibility" that such calls "might suffice when sufficiently pervasive or functional" and limited the holding to "the narrow basis that these conditions were not here fulfilled." *Id.* One call was a return call made by a defendant to a federal agent who had gone to Newark, New Jersey, and called the de-

fendant in New York City for the sole purpose of creating federal jurisdiction. *Id.* at 673, 681. In the Court's view, it was "immaterial" that the defendant had returned the call, instead of receiving it, as the Government had intended. *Id.* at 681. A second call, from New York City to Las Vegas, was an unsuccessful attempt to reach the federal agent. The probative value of this call was rejected because there was no possibility that the attempted call could further the criminal enterprise or even reach the intended recipient. *Id.* at 685. The third call, from Paris to New York City, was made by the federal agent. *Id.* Thus, the calls were either made by an agent, deemed the equivalent of a call by an agent, or considered unrelated to the crime. No comparable deficiency in the evidence is presented in this case, where Lau himself committed the substantial jurisdictional act of bringing drugs into the United States.

The judgment of the District Court is affirmed.