UNITED STATES of America

v.

**Reuben F. CLARK.**

**No. 4:93–CR–130–Y.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Feb. 4, 1994.

Paul E. Gartner, Jr., Fort Worth, TX, for plaintiff.

Timothy J. Henry, Fort Worth, TX, for defendant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS

MEANS, District Judge.

Pending before the Court is defendant REUBEN F. CLARK's ("Clark") motion to dismiss, filed December 7, 1993. After careful consideration of said motion, response, and the applicable law, the Court is of the opinion that the motion should be DENIED.

On November 4, 1993, Clark was indicted for conspiracy to violate 18 U.S.C. §§ 2312 & 2313, and for 23 violations of those statutes. Section 2312 makes it a crime to transport "in interstate or foreign commerce a motor vehicle ... knowing the same to have been stolen...." Section 2313 makes it a crime to receive, possess, conceal, store, barter, sell or dispose of any motor vehicle which has crossed a state or United States boundary after being stolen, knowing the vehicle to have been stolen. Clark was indicted along with two other defendants, who have since plead guilty.

When considering Defendant's motion to dismiss, the Court accepts as true the allegations contained in the indictment. 1 Charles A. Wright, Federal Practice & Procedure § 194 (1982). The indictment in this case charges that Clark and others transported numerous vehicles, which they knew to be stolen, from Texas to Oklahoma and disposed of them in that state. Thus, accepting those allegations as true, the government has presented a valid case against the defendant. Nevertheless, Defendant contends that even when accepting the government's allegations as true, the indictment should be dismissed based upon three grounds: (1) federal jurisdiction was "manufactured" by government agents, (2) the actions of the government constitute outrageous conduct in violation of the Due Process Clause of the Fifth Amendment, (3) the indictment violates the principle

of federalism set forth in the Tenth Amendment.

## I. MANUFACTURING FEDERAL JURISDICTION

Defendant argues that he "finds himself in federal court solely at the bidding of the law enforcement's undercover operation which required the defendants to deliver the stolen vehicles ... just across the Texas/Oklahoma border near Thackerville, Oklahoma." (Def.'s Mot. to Dismiss at 2.) Thus, Defendant contends, because no federal crime would have taken place but for the government's request that the vehicles be delivered out of state, federal jurisdiction does not exist. Courts that have considered similar arguments have generally rejected them.

The seminal case considering a claim of artificially created jurisdiction is *United States v. Archer*, 486 F.2d 670 (2d Cir.1973). The case involved a complex scheme by government agents to ferret out corruption in New York City's justice system. The Court found that federal jurisdiction had been improperly manufactured where federal agents feigned an arrest and tried to make payments to local officials to avoid conviction. One agent, after realizing the investigation had discovered only state crimes, crossed state lines to telephone one of the subjects, thereby using a facility in interstate commerce and creating a nexus for federal jurisdiction. The *Archer* case is often cited by defendants to support the proposition that the government cannot "manufacture" federal jurisdiction. However, courts considering such claims virtually always distinguish *Archer*. In fact, as noted by the Fifth Circuit, the *Archer* court on reconsideration emphasized that the decision "went no further than to hold that when the federal element in a prosecution under the Travel Act is furnished solely by undercover agents, a stricter standard is applicable than when the interstate or foreign activities are those of the defendants themselves...." *Id.* at 685–86 (cited in *United States v. Perrin*, 580 F.2d 730, 736 (5th Cir.1978), *aff'd on other grounds*, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979)).

Courts considering claims of manufactured federal jurisdiction have generally focused on two factors: (1) as suggested by the above *Archer* quote, whether it was the defendants themselves or government agents who committed the act that made the crime federal, which is invariably an act with an interstate element, and (2) whether the act providing the interstate nexus, which is presumably directed by the government to some extent, has significance in the case other than providing federal jurisdiction.

### A. Who Committed the Act Upon Which Federal Jurisdiction is Based?

■ In *Archer*, the government asserted federal jurisdiction based upon defendants' receipt of interstate telephone calls.[1] As one court has noted, "the defendant in *Archer* neither agreed to do nor did anything with interstate consequences; the federal officials did it all." *United States v. Podolsky*, 625 F.Supp. 188, 194 (N.D.Ill.1985), *aff'd*, 798 F.2d 177 (7th Cir.1986).

Courts considering cases similar to the one at bar, where the defendants themselves carried out the acts with interstate significance, have consistently held that federal jurisdiction is properly invoked. *See id.; United States v. Peters*, 952 F.2d 960 (7th Cir.) (discussed *infra* at 5–6), *cert. denied*, — U.S. —, 112 S.Ct. 1277, 117 L.Ed.2d 503 (1992); *United States v. Lau Tung Lam*, 714 F.2d 209 (2d Cir.) (discussed *infra* at 6–7), *cert. denied*, 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 322 (1983); *Perrin*, 580 F.2d at 736 (interstate nexus alleged was supplied by phone call made by defendant, not government agent); *United States v. Marcello*, 537 F.Supp. 1364, 1374–75 (E.D.La.1982) (defendants mailed insurance contract in furtherance of bribery scheme at direction of the government), *aff'd*, 703 F.2d 805 (5th Cir. 1983), *cert. denied*, 464 U.S. 935, 104 S.Ct. 341, 78 L.Ed.2d 309 (1983). In fact, several

---

1. Federal jurisdiction was based upon three calls: (1) a government agent went to New Jersey to call defendant in New York for sole purpose of creating federal jurisdiction, (2) the government provoked a call to Las Vegas that defendant would not have otherwise made, and (3) an agent called defendant from Paris while on another investigation. 486 F.2d at 681–83.

courts have rejected the manufactured jurisdiction argument even where government agents have themselves performed the interstate act, provided the defendant encouraged or was aware of the interstate element. *See United States v. Smith,* 749 F.2d 1568, 1569 (11th Cir.) (fact that interstate element of federal crime satisfied by travel of government agent does not bar conviction where defendant caused undercover FBI agent to travel in interstate commerce to execute scheme), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2680, 86 L.Ed.2d 698 (1985); *United States v. Bagnariol,* 665 F.2d 877, 899 (9th Cir.1981) (Travel Act conviction upheld where defendant caused government agent to place interstate telephone call), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982); *United States v. Barker,* 594 F.2d 709, 710 (8th Cir.1979) (federal jurisdiction exists where defendant aware that vehicle he stole would be transported in interstate commerce); *Perrin,* 580 F.2d at 736 (calls made by informant at behest of defendants sufficient to confer federal jurisdiction), *citing United States v. Hedge,* 462 F.2d 220, 223 (5th Cir.1972).

A recent Seventh Circuit case is similar to the one at bar. In *United States v. Peters,* 952 F.2d 960 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1277, 117 L.Ed.2d 503 (1992), the defendant contended that "the government improperly manufactured federal jurisdiction over him by inducing him to drive the stolen truck across the state line [from Illinois] into Indiana and that the case against him should have been dismissed." *See* 952 F.2d at 961. The Court found that the defendant "freely and voluntarily drove his stolen truck from Illinois to Indiana. The federal element necessary for jurisdiction was not furnished solely by undercover agents," as in *Archer. See id.* at 963 (internal quotes omitted). Moreover, the defendant "showed no reluctance in joining a conspiracy that would result in his stolen truck being transported out of Illinois; when asked, he did not hesitate to transport it out of Illinois himself." *Id.* Finally, the court found that "[t]he fact that the agents "steered" [the defendant] to commit a crime within federal jurisdiction rather than hand him over to [local] police does not render federal jurisdiction inappropriate." *See id.* (citation and

internal quote omitted). Like the defendant in *Peters,* Clark is alleged to have "freely and voluntarily" transported vehicles across state lines and to have disposed of them there. He also did not hesitate, when asked, to transport the vehicles across state lines. As a result, this Court finds, as the *Peters* court did, that the fact that government agents "steered" the defendant to commit a crime within federal jurisdiction does not render such jurisdiction inappropriate.

The holding of a Second Circuit opinion also prevents any application of an *Archer* defense to the instant case. In *United States v. Lau Tung Lam,* 714 F.2d 209 (2d Cir.), *cert. denied,* 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 322 (1983), which was decided by the same court that decided *Archer* ten years earlier, the defendant asserted that although he had been selling heroin in Europe, it was this country's Drug Enforcement Agency that lured him to sell in New York. Accordingly, he claimed, "no crime would have existed in this country but for the conduct of the Government's agents who themselves created the federal nexus which permitted prosecution." *Id.* at 210 (citing appellant's brief). The court found that "[t]he Government has an entirely legitimate interest in identifying and apprehending European drug dealers willing to bring narcotics to this country for sale." Furthermore, "Lau himself committed the substantial jurisdictional act of bringing drugs into the United States." *Id.* at 211. This *Lau Tung Lam* analysis applies with equal force to our case: the government has a legitimate interest in identifying and apprehending car thieves and fences willing to transport cars across state lines; and the defendants are charged with the substantial jurisdictional act of transporting the vehicles across state lines.

For the foregoing reasons, the Court finds that the government did not improperly manufacture federal jurisdiction. The defendants subjected themselves to federal jurisdiction by allegedly transporting and disposing of stolen vehicles in interstate commerce.

B. Did the Government Have Independent Reasons for Introducing the Interstate Element?

In analyzing defendants' claims that the government artificially created federal

jurisdiction, courts have often looked to whether the interstate element introduced by the government served any purpose in the investigation other than the creation of federal jurisdiction. *See Peters,* 952 F.2d at 964 (government agent's decision to have defendant drive stolen truck across state lines not based solely upon creation of federal jurisdiction); *United States v. Coates,* 949 F.2d 104, 106 (4th Cir.1991) (discussed *infra* at 8–9); *United States v. Garrett,* 716 F.2d 257, 267 (5th Cir.1983) (court should forbid the government agent's movement out of state for sole purpose of manufacturing Travel Act jurisdiction), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984); *United States v. Pecora,* 693 F.2d 421, 424 (5th Cir. 1982) (jurisdiction proper where government agent asked defendant to return call prior to learning she was out of state), *cert. denied,* 462 U.S. 1119, 103 S.Ct. 3087, 77 L.Ed.2d 1348 (1984); *United States v. Shields,* 793 F.Supp. 768, 781 (N.D.Ill.1991) (reasons cited by government for use of out-of-state agents not implausible); *United States v. Kabala,* 680 F.Supp. 1254, 1258 (N.D.Ill.1988) (government's use of Canadian post office box served legitimate investigative purpose other than creating federal jurisdiction).

One circuit court has reversed a judgment of conviction where the government did not have an independent reason for using an interstate facility to provide federal jurisdiction. In *United States v. Coates,* 949 F.2d 104 (4th Cir.1991), the defendant had been convicted of using an interstate facility, a telephone, in a murder-for-hire scheme, in violation of 18 U.S.C. § 1958. In reversing the judgment below, the court noted that "the government agent drove [across state lines] for the sole purpose of making a telephone call ... in order to induce [the defendant] to "use" that interstate facility to discuss the scheme." *See* 949 F.2d at 105. That it was the government agent, and not the defendant, who initiated the interstate

act supposedly conferring jurisdiction was apparently not determinative for the court. Rather, because the government acknowledged · that the only reason it placed the interstate call was to provide federal jurisdiction, the court's holding relied "entirely on the fact that the *only* reason the sole jurisdictional link occurred here was that it was contrived by the government for that reason alone." *See id.* at 106.

This Court holds that when the government creates an interstate nexus solely to provide federal jurisdiction, that factor alone does not dispose of the improperly manufactured jurisdiction issue. Rather, the Court holds that where the defendant himself is alleged to have committed the act upon which federal jurisdiction is based, that fact decisively overrides the question of whether the sole purpose for the introduction of the federal element was to create jurisdiction. To the extent that the *Coates* court holds that the "sole purpose" question is, alone, dispositive, this Court departs from that court's reasoning.[2]

## II. ENTRAPMENT AND OUTRAGEOUS GOVERNMENT CONDUCT

The doctrine of manufactured jurisdiction has been called a "cousin" of the doctrines of entrapment and outrageous government conduct.[3] *See United States v. Podolsky,* 625 F.Supp. 188, 194 (N.D.Ill.1985), *aff'd,* 798 F.2d 177 (7th Cir.1986). Indeed, there is substantial overlap among Defendant's manufactured jurisdiction claim and his entrapment and outrageous government conduct claims. Insofar as the latter two defenses can be distinguished from the former, the Court finds that they are without merit, and denies the defendant's motion to dismiss based upon those grounds.

### A. Entrapment

█ "The first step in a successful entrapment defense is to make a prima facie show-

---

**2.** This Court can only speculate that the result in *Coates* would not have been the same if it had been the defendant, not the government agent, who actually carried out the interstate act, despite the fact that the act was initiated for the sole purpose of creating jurisdiction.

**3.** Some courts have wholly questioned the vitality of the principle of manufactured jurisdic-

tion described in *Archer,* apart from an entrapment defense or some negation of an element of the crime, such as intent. *See United States v. Petit,* 841 F.2d 1546, 1553 (11th Cir.), *cert. denied,* 487 U.S. 1237, 108 S.Ct. 2906, 101 L.Ed.2d 938 (1988); *Podolsky,* 798 F.2d at 177.

ing that government conduct created a substantial risk that an offense would be committed by a person other than one ready to commit it." *United States v. Hudson,* 982 F.2d 160, 161 (5th Cir.) (citations and internal quotes omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 100, 126 L.Ed.2d 67 (1993). In the instant case, the government has alleged over two dozen counts of violating federal auto theft and transport statutes. Nowhere has the defendant asserted that the violations were concocted in a such a way that an otherwise unwilling defendant would be entrapped into committing the offenses. In fact, "where the defendant is simply provided with the opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition." *Jacobson v. United States,* —— U.S. ——, ——, 112 S.Ct. 1535, 1541, 118 L.Ed.2d 174 (1992). Thus, there is certainly no cause to dismiss the indictment on the ground of entrapment; if defendant presents sufficient evidence at trial indicating he was not predisposed to commit the crimes alleged, he will be entitled to an entrapment jury charge.

B. Outrageous Government Conduct

■ Where law enforcement conduct is so outrageous that it violates fundamental fairness and is shocking to the universal sense of justice, it violates the Due Process Clause of the Fifth Amendment. *United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973) (cited in *United States v. Yater,* 756 F.2d 1058, 1065 (5th Cir.), *cert. denied,* 474 U.S. 901, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985)). "It is well-established in this circuit that a due process violation [based upon outrageous government conduct] will be found only in the rarest and most outrageous circumstances." *United States v. Arteaga,* 807 F.2d 424, 426 (5th Cir.1986) (citations and internal quotes omitted).

Moreover, the outrageous government conduct defense generally is available only upon proof of government *overinvolvement* in the charged crime and proof of the defendant's mere passive connection to the government orchestrated and implemented criminal activity. A defendant cannot avail himself of the defense where he has been an *active participant* in the criminal activity which gave rise to his arrest.

*United States v. Nations,* 764 F.2d 1073, 1077 (5th Cir.1985) (citations and internal quotes omitted).

■ It is clear that the defendant in the instant case has not made out a valid outrageous-government-conduct defense. Defendant Clark has not alleged any facts indicating that he was a passive participant in the crime or that government agents were overinvolved in the investigation. The Fifth Circuit cases cited above evince considerably greater government involvement in the criminal activity investigated than that which appears to have occurred in our case, and those cases did not result in any finding that due process had been violated. Accordingly, Defendant's motion to dismiss as it relates to purported outrageous government conduct is denied.

III. FEDERALISM AND THE TENTH AMENDMENT

■ Because the Court has determined that the charges leveled against the defendant in this case have properly conferred federal jurisdiction, it finds that the principle of federalism enumerated in the Tenth Amendment has not been violated. The Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." By allegedly transporting and disposing of stolen automobiles in interstate commerce, Defendant placed himself outside the scope of any limitation imposed by the Tenth Amendment. *See* U.S. Const. art. I, § 8, cl. 3 (Commerce Clause).

After finding that federal jurisdiction exists, the Court will not speculate as to the wisdom of the government's decision to prosecute the defendant in federal court, as opposed to turning him over to state or county prosecutors. (*See* Def.'s Mot. to Dismiss at 9–12.) Such decisions are executive in nature, and not within the ambit of the judicial branch. *United States v. Petit,* 841 F.2d

1546, 1554 (11th Cir.), *cert. denied,* 487 U.S. 1237, 108 S.Ct. 2906, 101 L.Ed.2d 938 (1988); *United States v. Podolsky,* 798 F.2d 177, 181 (7th Cir.1986).

## IV. CONCLUSION

It is, therefore, ORDERED that defendant Clark's motion to dismissed is, in all parts, DENIED.

SO ORDERED.