**UNITED STATES of America, Appellant–Cross–Appellee,**

v.

**Michael LaPORTA and Vincent Sicurella, also known as "Jimmy," Defendants–Appellees–Cross–Appellants.**

Nos. 39, 89 and 90, Dockets 93–1826 to 93–1828.

United States Court of Appeals, Second Circuit.

Argued Oct. 4, 1994.

Decided Dec. 30, 1994.

---

Anthony M. Bruce, Asst. U.S. Atty., Buffalo, NY (Patrick H. NeMoyer, U.S. Atty., W.D.N.Y.), for appellant-cross-appellee.

Herbert L. Greenman, Buffalo, NY (Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, of counsel), for defendant-appellee-cross-appellant Vincent "Jimmy" Sicurella.

Joel L. Daniels, Buffalo, NY, for defendant-appellee-cross-appellant Michael LaPorta.

Before: MESKILL, MAHONEY and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Michael LaPorta and Vincent "Jimmy" Sicurella were arrested after they had burned Sicurella's car to collect on the car's insurance and after they fell for a government sting operation by setting a government car

on fire. They were indicted for: (1) conspiracy to commit mail fraud and destroy government property, in violation of 18 U.S.C. § 371; (2) mail fraud, in violation of 18 U.S.C. § 1341; (3) use of fire to commit mail fraud, in violation of 18 U.S.C. § 844(h)(1); (4) destruction of government property, in violation of 18 U.S.C. § 1361; and (5) use of fire to destroy government property, in violation of 18 U.S.C. § 844(h)(1). After a jury trial in the United States District Court for the Western District of New York (John T. Curtin, *Judge*), they were convicted on all five counts. Subsequently, the district court dismissed the fifth count, finding that the crime charged therein should have been charged under 18 U.S.C. § 844(f), rather than (h)(1).

The government appeals the dismissal of the fifth count. LaPorta and Sicurella cross-appeal, contending that the district court erred by: (1) ruling that defendants' ignorance that the car they burned was a government car was not a defense to destruction of government property; (2) ruling that "consent" was not a defense to destruction of government property; and (3) refusing to grant a hearing on defendants' motion to dismiss the destruction of government property counts based on their claim of manufactured jurisdiction. Sicurella adds arguments that: (4) the government improperly obtained a superseding indictment just to circumvent a magistrate judge's order severing the original indictment; and (5) the proof that Sicurella had his own vehicle torched did not suffice to support his conviction.

AFFIRMED.

## BACKGROUND

In August, 1989, an FBI informant in Buffalo happened to notice that Vincent Sicurella's car was burned-out. He reported his observation to the FBI. Shortly thereafter, Sicurella told the Buffalo police that his car had been stolen. Sicurella submitted a claim to his insurance company for the loss of the vehicle. As part of the claim process, Sicurella mailed sworn statements to the company that he had not participated in the loss. He received $2,144.76 from the company.

Trying to determine whether arson was involved in the burning of Sicurella's car, the FBI wired their informant and had him ask Sicurella whether he would torch the informant's "daughter's" car (actually a government Buick) to collect the insurance. Sicurella admitted that he had had his own car "done," agreed to broker the arson, and instructed the informant how to report the loss to the police and make the insurance claim.

A few weeks later, the informant gave Sicurella the keys to the government Buick, along with $200 for brokering the deal and another $200 to pay the arsonist. Soon after, Michael LaPorta received a second set of keys to the Buick. FBI surveillance agents followed LaPorta as he drove it to a local garage he owned. He parked the car on the street; half an hour later, it was taken into the garage. Thereafter, Donald Oliver drove it back to the street.

That night, Oliver drove the Buick to a remote location. He was followed by a second car registered to LaPorta. After the government Buick was parked for a brief period, it suddenly burst into flames. The fire burned the dashboard and front seat area of the Buick, the same burn pattern found in Sicurella's car.

Sicurella and Oliver were arrested and charged with several crimes. The original indictment charged them with: (1) mail fraud; (2) use of fire to commit mail fraud; (3) conspiracy to injure property of the United States; (4) injuring property of the United States; and (5) using fire to injure property of the United States. The first two counts related to the earlier arson of Sicurella's car; the last three involved the arson of the government Buick.

Oliver pled guilty and began cooperating with the government. Sicurella, on the other hand, moved to sever counts (1) and (2), the mail fraud counts pertaining to his own car, from the remaining three counts, which concerned the destruction of the government Buick. The stated ground for the severance was that he wanted to testify about his own car, but feared that doing so would expose him to cross-examination about the Buick. The district court referred Sicurella's motion to a magistrate judge (Leslie G. Foschio,

*Magistrate Judge*), who, acting under his authority to resolve non-dispositive pre-trial motions under 28 U.S.C. § 636(b)(1)(A), granted it.

In response, the government obtained a five-count superseding indictment. The first count covered both cars, charging Sicurella with conspiring to (1) commit mail fraud in connection with the arson of his car, and (2) destroy the government Buick. Counts Two and Three concerned the arson of his car: Count Two charged him with mail fraud, in violation of 18 U.S.C. § 1341; and Count Three charged him with using fire to commit mail fraud, in violation of 18 U.S.C. § 844(h)(1). The last two counts involved the destruction of the government Buick: Count Four charged Sicurella with destruction of government property, in violation of § 1361; and Count Five charged him with using fire to destroy government property, in violation of 18 U.S.C. § 844(h)(1). A second superseding indictment filed thereafter added LaPorta as a defendant on all five counts.

Because the new indictment mooted the original indictment as well as the magistrate judge's decision to sever parts of it, and still wishing to testify only about his car and not the government Buick, Sicurella moved again to sever Counts Four and Five from the rest, and to sever Count One "within itself." Sicurella, thus, wanted two trials: in one, the mail fraud conspiracy would be tried along with the Second and Third Counts (all involving his own car), and in the other, the destruction of government property conspiracy would be tried with the Fourth and Fifth Counts (all involving the Buick). This time, the magistrate judge denied the motion.

On the eve of trial, the defendants moved to dismiss the parts of the indictment involving the arson of the government car. They claimed that the FBI had "manufactured" federal jurisdiction. They also claimed that to be convicted of destroying government property, the government had to prove that they knew they were burning a car owned by the government. The district court denied the motion in both respects.

At the defendants' joint trial, which lasted four days, Oliver testified that LaPorta recruited him to torch both cars. Oliver also described the manner in which the cars were torched. His testimony was confirmed by an FBI lab report. The government also introduced the recorded conversations between its informant and Sicurella. In addition, an FBI agent testified about his surveillance of the defendants the day the government Buick was burned.

At the close of evidence, the defendants moved to dismiss the destruction of government property count, claiming that the government had conceded that they did not know the Buick was a government car. The motion was denied. Alternatively, they requested a jury charge that they could not be convicted of destroying government property if the jury found that the defendants did not know that the Buick they torched belonged to the government. They also requested an instruction that they could not be convicted of destroying government property if the jury found that the government had consented to the arson of the Buick. The district court denied these requests.

After a day of deliberations, the jury found both defendants guilty of all five counts. The district court subsequently dismissed Count Five—the § 844(h)(1) charge concerning the arson of the Buick—over the government's objection. *See United States v. Sicurella*, 834 F.Supp. 621 (W.D.N.Y.1993). Thus, the defendants were convicted of conspiracy involving the two cars; mail fraud and use of fire to commit mail fraud, both involving Sicurella's car; and destruction of the government Buick. Sicurella was sentenced to sixty-six months' imprisonment, and LaPorta was sentenced to seventy-two months.

The government appeals from the dismissal of Count Five of the indictment; and Sicurella and LaPorta cross-appeal from various aspects of their trial and conviction.

## DISCUSSION

### I.  *The Government's Appeal*

Count Five charged a violation of § 844(h)(1), use of fire to commit "any felony." The predicate felony is charged in Count Four, willful destruction of govern-

ment property, in violation of § 1361. The district court ruled that another part of § 844—§ 844(f)—specifically covered destruction of government property by fire, and thus trumped the § 844(h)(1) charge, which the court then dismissed. We are the first Circuit (and only the second court) to address this issue. We are persuaded by the district court's interpretation of § 844.

We review an issue of statutory construction *de novo*. *United States v. Proyect*, 989 F.2d 84, 87 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 80, 126 L.Ed.2d 49 (1993). When interpreting a statute, we start with the language of the statute. *Schreiber v. Burlington N., Inc.*, 472 U.S. 1, 5, 105 S.Ct. 2458, 2461, 86 L.Ed.2d 1 (1985). In so doing, we read the statute "as a whole, since the meaning of statutory language, plain or not, depends on the context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) (citation omitted). Moreover, " 'all parts of a statute, if possible, are to be given effect.' " *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 163, 102 S.Ct. 3014, 3027, 73 L.Ed.2d 664 (1982) (quoting *American Textile Mfrs. Inst. Inc. v. Donovan*, 452 U.S. 490, 513, 101 S.Ct. 2478, 2492–93, 69 L.Ed.2d 185 (1981)). Finally, when the text proves to be ambiguous, we will turn to other sources to divine Congress' intent.

18 U.S.C. § 844(f) provides:

Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned, possessed, or used by, or leased to, the United States ... shall be imprisoned for not more than ten years....

18 U.S.C. § 844(h)(1), on the other hand, provides:

"Whoever uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States [is guilty of an offense]."

While § 844(f) carries a sentence of up to ten years' imprisonment, § 844(h)(1) tacks on a mandatory term of five years' imprisonment consecutive to the punishment for the underlying crime.

Neither section mentions the other. Section 844(f) does not state that it alone governs destruction of government property by fire or explosive. Reading the statute as a whole, however, suggests that § 844(f) displaces § 844(h)(1) when the underlying offense is destruction of government property.

■ Section 844(f) is specifically limited to the *destruction of government property* by fire or explosive. Section 844(h)(1), while also limited to fire or explosives, sweeps more broadly; it proscribes generally the use of these means to commit "any" federal felony, not just property destruction. Under long-standing principles of statutory construction, a general section of a statute must give way to a specific one. *See Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1752–53, 64 L.Ed.2d 381 (1980) ("a more specific statute will be given precedence over a more general one, regardless of their temporal sequence") (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489–90, 93 S.Ct. 1827, 1836–37, 36 L.Ed.2d 439 (1973)).

■ The government contends that it simply exercised its right to elect between overlapping statutes, as it might choose to ignore a burglary and prosecute the accompanying larceny. True, where an act violates more than one criminal statute, the government may usually prosecute under either statute. *See United States v. Batchelder*, 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2203–04, 60 L.Ed.2d 755 (1979). Here, though, the specific statute—§ 844(f)—must logically preempt the general one, for otherwise § 844(f) would be rendered superfluous: § 844(h)(1), when coupled with § 1361 (which proscribes the willful injury of government property), would prohibit willful destruction of government property by fire, covering every circumstance that § 844(f)—malicious destruction of government property by fire—covers. Such a construction would rob § 844(f) of all practical effect, surely not the Congressional intent.

■ The government makes much of the argument that section 844(h)(i) applies to "any felony." But that seemingly categorical phrase is not always as self-explanatory as, at first blush, it might appear. For example, in *Busic*, the Supreme Court wrestled with

the very same words, as they appear in 18 U.S.C. § 924(c) providing for enhanced penalties for crimes committed with a gun. In that statute, the simple phrase "any felony" was held not to resolve "whether Congress intended (1) to provide for enhanced penalties only for crimes not containing their own enhancement provisions, (2) to provide an alternative enhancement provision applicable to all felonies, or (3) to provide a duplicative enhancement provision which would permit double enhancement." *Busic,* 446 U.S. at 407, 100 S.Ct. at 1753. We find the phrase "any felony" no less equivocal here. Under the rule of lenity, this ambiguity has to be resolved in the defendants' favor. *See United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971) ("ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity") (quotation marks and citation omitted).[1]

The reason the government turned to § 844(h)(1) is fairly transparent. That section imposes a mandatory minimum sentence, and a consecutive one at that. In contrast, although § 844(f) carries a sentence of up to ten years' imprisonment, it has no mandatory minimum. We believe the government's novel twist on § 844(h)(1) is unwarranted. *Cf. id.* (" 'when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite' ") (quoting *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221–22, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952)).

The legislative history supports our reconciliation of §§ 844(f) and 844(h)(1). Section 844 of the Organized Crime Control Act of 1970 focussed on explosives because of their inherent danger. (In 1982, § 844 was amended to bar the use of fire, as well as explosives.) The Congressional Report for the 1970 act recognized that generic "[w]illful destruction of Government property by any means" was already prohibited by 18 U.S.C. 1361. "However, because use of explosives is so inherently dangerous to life, it is desirable to have specific legislation dealing with destruction by explosives...." H.R.Rep. No. 1549, 91st Cong., 2d Sess. 2 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4046. Thus, § 844(f) was enacted in 1970 to address the specific problem of explosives (and, later, fire). In contrast, § 844(h)(1), enacted simultaneously with § 844(f), was intended only to extend to explosives the stringent controls Congress had earlier placed on firearms in the 1968 Gun Control Act. *Id.*

We conclude, therefore, that where a defendant is charged with *destruction of government property* by fire, the government must proceed under § 844(f), rather than under a combination of § 844(h)(1) and the underlying felony of § 1361. Accordingly, the district court did not err in dismissing Count Five of the indictment.

## II. *The Defendants' Cross–Appeal*

Between them, the defendants raise five arguments. We find no merit in any of them.

---

1. The government cited *United States v. Hayward,* 6 F.3d 1241 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1369, 128 L.Ed.2d 46 (1994), in a letter after filing its briefs. In *Hayward,* a cross-burning case, the defendants were convicted under § 844(h)(1) of using fire to violate 18 U.S.C. § 241 (conspiracy against civil rights). The defendants had argued that only arson could serve as the predicate felony under § 844(h)(1), a conclusion rejected by the court. Although *Hayward* contains broad language suggesting that "any felony" means "any felony," the holding is narrower: "[t]he language of [§ 844(h)(1)] does not limit itself to the prosecution of arson cases." *Id.* at 1246. *Hayward* did not address a contest between the internal provisions of § 844. *See id.* at 1248 ("the application of section 844(h)(1) to cross burnings ... does not frustrate the overall statutory scheme of section 844"). Finally, *Bu-*

*sic,* unlike *Hayward,* addressed head-on the inherent slipperiness of the phrase "any felony" when it appears in an enhancement statute.

Similarly, the government's reliance on *United States v. Fiore,* 821 F.2d 127 (2d Cir.1987), is misplaced. There, the defendant argued that his indictment was multiplicitous because he was charged under both § 844(h)(1) (with mail fraud as the predicate felony), and § 844(i) (destruction of property in interstate commerce), even though he had set only one fire. We rejected his argument, finding that each of the two sections requires proof of an element that the other does not. *Id.* at 130–31. The defendants here do not contend that their indictment was multiplicitous; rather, they argue that the government is bound to proceed under § 844(f) when the charge is destruction of government property by fire.

A. *Ignorance of Actual Ownership as a Defense to Destruction of Government Property.*

■ The government concedes that the defendants did not know that the informant's Buick actually belonged to the government. The defendants argue that to be convicted of destruction of government property, under 18 U.S.C. § 1361, the government must show that they knew the government owned the property in question. We find no such scienter requirement under § 1361.

Section 1361 authorizes the prosecution of "[w]hoever willfully injures or commits any depredation against any property of the United States." The statute does not on its face require that the defendant know that the property he is "depredating" belongs to the government. Government title to the property is merely a "jurisdictional fact" of the sort addressed in *United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975).

In *Feola,* the defendants assaulted one of their buyers during a drug sale. The buyers turned out to be undercover federal agents. The defendants were convicted of assaulting a federal agent in the course of his official duties, in violation of 18 U.S.C. § 111. The Supreme Court affirmed the convictions, holding that the government did not have to prove that the defendants knew their victims were federal agents. *Id.* at 676–86, 95 S.Ct. at 1259–65.

*Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) is not to the contrary. There, a defendant was charged with converting government property—a number of bomb casings—in violation of 18 U.S.C. § 641. The applicable statute proscribed "embezzl[ing], steal[ing], purloin[ing], or knowingly convert[ing] to his use or the use of another . . . any . . . thing of value of the United States." 18 U.S.C. § 641. Rejecting an argument for strict liability, the Court held that a defendant could not be convicted unless he knew that the property he was taking belonged to another. *Id.* at 270–71, 72 S.Ct. at 253–54.

*Morissette* does not require that the defendant know the property in fact belonged to the U.S. government; it requires merely that the defendant know it belongs to someone other than himself. *See id.* Indeed, since *Morissette,* we have held that under § 641, proof "that the stolen [or converted] property in fact belonged to the government was to lay the basis for federal jurisdiction and that the defendant's knowledge of the jurisdictional fact is irrelevant." *United States v. Jermendy,* 544 F.2d 640, 641 (2d Cir.1976) (per curiam) (citing *Feola* ), *cert. denied,* 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977).

The Supreme Court has in recent years interpreted some "criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *United States v. X-Citement Video, Inc.,* — U.S. —, —, 115 S.Ct. 464, 468, 130 L.Ed.2d 372 (1994). These cases, however, invariably involve statutes that criminalize otherwise innocent conduct, where a "presumption in favor of a scienter requirement should apply." *Id.* — U.S. at —, 115 S.Ct. at 469; *see, e.g., id.* (to be convicted under 18 U.S.C. § 2252, a defendant must know he is trafficking in pornography involving children "because non-obscene, sexually explicit materials involving persons over the age of 17 are protected by the First Amendment"); *Staples v. United States,* 511 U.S. —, —, 114 S.Ct. 1793, 1799, 128 L.Ed.2d 608 (1994) (to be convicted of possession of an unregistered machine gun, the defendant must know his weapon could be fired automatically; anything less would criminalize behavior that fell within "a long tradition of widespread lawful gun ownership by private individuals"); *Liparota v. United States,* 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985) (finding a scienter requirement in a statute prohibiting the use of food stamps in any manner not authorized by the statute, since to hold otherwise would "criminalize a broad range of apparently innocent conduct").

Arson is hardly "otherwise innocent conduct." No one harbors settled expectations that he is free to burn the property of others. *Contrast X-Citement Video,* — U.S. at — – —, 115 S.Ct. at 468–69 ("Persons do not harbor settled expectations that the con-

tents of magazines and films are generally subject to stringent public regulation. In fact, First Amendment constraints presuppose the opposite view."). Nor is arson constitutionally protected conduct. Accordingly, the district court did not err in refusing to dismiss the destruction of government property count or in refusing to charge the jury that the government must prove that the defendants knew the Buick belonged to the government.[2] *See United States v. Tillem,* 906 F.2d 814, 828 (2d Cir.1990) (a requested jury charge must accurately represent the law).

### B. *Consent as a Defense to Destruction of Government Property*

■ The defendants argue that because the government gave them the Buick to be burned, the district court should have instructed the jury that consent was an absolute bar to guilt under § 1361. This is an issue of first impression, and we disagree with the defendants.

Section 1361 authorizes the prosecution of "[w]hoever willfully injures or commits any depredation against any property of the United States." Nowhere on its face does the statute indicate that consent is a defense, nor does it indicate that lack of consent is one of the elements that the government must prove. Moreover, the legislative history for § 1361 makes no mention of consent.

The defendants basically challenge the government's right to use sting operations. Time and again, however, we have upheld convictions stemming from sting operations. *See, e.g., United States v. Asencio,* 873 F.2d 639, 641 (2d Cir.1989) ("Offering ... willing buyers a chance to purchase what they thought was a kilo of heroin, but turned out to be dextrose plus one-half a gram of heroin neither offends due process nor occasions the

exercise of our supervisory power."); *United States v. Lau Tung Lam,* 714 F.2d 209, 209–11 (2d Cir.) (international drug dealer invited by government agent to make a drug sale in the United States), *cert. denied,* 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 322 (1983); *United States v. Myers,* 692 F.2d 823, 834–47 (2d Cir.1982) (affirming convictions obtained as a result of the Abscam sting operation, where Congressmen were bribed), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2437, 77 L.Ed.2d 1322 (1983).

The defendants' reliance on *United States v. Bennett,* 665 F.2d 16 (2d Cir.1981), is misplaced. The defendant there was convicted of receiving, storing, and disposing of a stolen truck, in violation of 18 U.S.C. § 2313, and selling stolen goods, in violation of 18 U.S.C. § 2315. These statutes, however, expressly required that the truck and goods be stolen, and that defendant knew this. *See* 18 U.S.C. § 2313 ("[w]hoever receives, ... stores, ... or disposes of any motor vehicle ... knowing the same to have been stolen"); 18 U.S.C. § 2315 ("[w]hoever ... sells.... any goods ... knowing the same to have been stolen"). We held that "[b]ecause the concept of 'stolen' property requires an interference with the property rights of its owner, property that has been transported, sold, or otherwise disposed of, with the consent of the owner cannot be considered 'stolen' within the meaning of §§ 2312–2315." *Bennett,* 665 F.2d at 22. Thus, unlike § 1361, the statutes at issue in *Bennett* made the issue of consent material. That is not our case.

Accordingly, the district court did not err in refusing to give a charge to the jury on "consent."

### C. *Motion to Dismiss Counts Four and Five*

Relying on *United States v. Cuervelo,* 949 F.2d 559 (2d Cir.1991), and Judge Friendly's

---

**2.** We note that the Eighth Circuit has assumed that § 1361 requires the government to prove that the defendants knew they were destroying government property. *See United States v. Bangert,* 645 F.2d 1297, 1305 (8th Cir.1981) ("there was substantial evidence from which the jury could infer that the defendants knew that the flag they burned was owned by the United States government"), *cert. denied,* 454 U.S. 860, 102 S.Ct. 314, 70 L.Ed.2d 158 (1981). The *Bangert*

court, however, cited no authority for this construction of § 1361. Moreover, *Bangert* involved flag-burning, which, unlike common law arson, in some circumstances is constitutionally-protected conduct. *See United States v. Eichman,* 496 U.S. 310, 315, 110 S.Ct. 2404, 2407–08, 110 L.Ed.2d 287 (1990), *Texas v. Johnson,* 491 U.S. 397, 402–06, 109 S.Ct. 2533, 2538–41, 105 L.Ed.2d 342 (1989).

opinion in *United States v. Archer*, 486 F.2d 670 (2d Cir.1973), the defendants argue that the trial court erred in denying their eleventh-hour motion for a hearing on their claim that the government had "manufactured" federal jurisdiction by enticing the defendants to torch a government car. We disagree.

We assume the defendants are arguing that by "manufacturing" federal jurisdiction, the government has engaged in conduct so outrageous "that due process considerations bar the government from prosecuting" them. *Cuervelo*, 949 F.2d at 565. In *Cuervelo*, we explained that when a defendant alleges outrageous government conduct, "conducting a hearing is the *preferred* course of action in cases where disputed factual issues exist." *Id.* at 567 (emphasis added). Moreover, we found it "clearly preferable" that a motion alleging outrageous government conduct be "filed sufficiently in advance of trial so that the district judge has a full opportunity to decide *whether a pre-trial hearing is necessary, and if so,* the breadth and extent of the hearing." *Id.* (emphasis added).

■ Nothing in *Cuervelo* requires a district court to conduct a hearing every time a defendant alleges outrageous government misconduct. Moreover, in their very motion for a hearing, the defendants conceded that the facts were not in dispute. Without disputed facts, no hearing was necessary. We note as well that the defendants' motion came on the eve of trial. Although circumstances may sometimes "not allow for timely filing of such a motion," *id.,* the defendants have offered no excuses for their delay.

■ Nor, in any event, are we persuaded that the government's conduct was so outrageous as to trench upon due process. "[T]he due process requirement of fundamental fairness may have a special pertinence when [the] Government creates opportunities for criminal conduct in order to apprehend those willing to commit crimes." *Myers*, 692 F.2d at 837. To violate due process, however, the government's conduct must reach " 'a demonstrable level of outrageousness before it could bar conviction.' " *Id.* (quoting *Hampton v. United States*, 425 U.S. 484, 495 n. 7, 96 S.Ct. 1646, 1653 n. 7, 48 L.Ed.2d 113 (1976) (Powell, J., concurring)). Such a claim rarely succeeds. *See United States v. Santana*, 6 F.3d 1, 4 (1st Cir.1993) (citing *United States v. Twigg*, 588 F.2d 373 (3d Cir.1978) as the only time since "*Hampton* [that] a federal appellate court has granted relief to a criminal defendant on the basis of the outrageous misconduct defense"); *Asencio*, 873 F.2d at 641 ("[a]fter *Hampton*, claims based on Government involvement in the undercover supply of contraband have not been successful in [the Second] Circuit").

*Archer* is cold comfort to the defendants' due process claim. Our holding there was carefully limited, *Lau Tung Lam*, 714 F.2d at 210, and addressed "a proper principle of federal criminal procedure, not ... due process." *Archer v. Commissioner of Correction*, 646 F.2d 44, 46 (2d Cir.1981) (Friendly, J.). *Archer* reversed a conviction under the Travel Act, 18 U.S.C. § 1952, because three interstate telephone calls from or to a federal agent "did not suffice to bring the defendants" within the Act. *Archer*, 486 F.2d at 683. Although such calls "might suffice when sufficiently pervasive or functional," *id.* at 684, the calls in *Archer* served no purpose other then to manufacture federal jurisdiction. *See Lau Tung Lam*, 714 F.2d at 210–11. Adding insult to injury in *Archer*, as part of the federal investigation, undercover agents lied to New York police officers and committed perjury before New York judges and grand jurors. *Archer*, 486 F.2d at 672.

Here, in contrast, the defendants do not argue that government agents lied or committed other crimes. Indeed, we noted in *Archer* that government agents who set up a sting operation have no criminal intent. *Id.* at 675. Moreover, here, "as in the more common cases where federal undercover agents have induced the sale of narcotics, the criminal activity in which the Government agents participated was the very activity for which [Sicurella] was prosecuted." *Id.* at 675. Finally, here, the defendants themselves "committed the substantial jurisdictional act" of burning the government Buick. *Lau Tung Lam*, 714 F.2d at 211.

Accordingly, the district court committed no error in declining to hold a hearing on the

defendants' claim of manufactured jurisdiction.

### D. *Sicurella's Motion for a Severance*

■ Sicurella argues that the government acted improperly by bringing a superseding indictment to circumvent Magistrate Judge Foschio's order severing the original indictment. Consequently, he argues that the district court should have "internally severed" Count One of the second superseding indictment, so that the mail fraud conspiracy count would be tried with the Second and Third Counts, and the destruction of government property conspiracy count would be tried separately with the Fourth and Fifth counts. He also argues that the district court should then have severed Counts Two and Three from Counts Four and Five, so that he could testify about his car in a trial on Counts Two and Three. We disagree with Sicurella across the board.

Sicurella relies on three cases to support his claim that the government's alleged improper motive in bringing a superseding indictment requires a new trial: *United States v. Vanwort,* 887 F.2d 375 (2d Cir.1989), *cert. denied sub nom. Chapoteau v. United States,* 495 U.S. 906, 110 S.Ct. 1927, 109 L.Ed.2d 290 (1990), *and cert. denied sub nom. DaSilva v. United States,* 495 U.S. 910, 110 S.Ct. 1936, 109 L.Ed.2d 299 (1990); *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels),* 767 F.2d 26, 29 (2d Cir.1985); and *United States v. Dardi,* 330 F.2d 316 (2d Cir.), *cert. denied,* 379 U.S. 845, 869, 85 S.Ct. 50, 117, 13 L.Ed.2d 50 (1964). All three cases involved claims of government abuse of the grand jury process. These cases stand for the unremarkable proposition that it is " ' "improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial." ' " *Vanwort,* 887 F.2d at 387 (quoting *In re Grand Jury,* 767 F.2d at 29 (quoting *Dardi,* 330 F.2d at 336)). By bringing a superseding indictment, the government here was not "preparing an already pending indictment for trial." Rather, it was ensuring that it could try at the same time before the same jury the crimes relating to the arson of Sicurella's car and the government car.

■ Moreover, given the adversarial nature of pretrial criminal practice, a prosecutor "should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *United States v. Goodwin,* 457 U.S. 368, 382, 102 S.Ct. 2485, 2493, 73 L.Ed.2d 74 (1982). Provided the prosecutor acted with probable cause to believe that Sicurella committed the crimes with which he was charged in the superseding indictment—and Sicurella does not argue the prosecutor lacked probable cause—the prosecutor's decision regarding what charges to bring before the grand jury rested entirely within his discretion. *See Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978).

■ In addition, a prosecutor abuses his charging discretion if his decision to charge springs "solely from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution." *Goodwin,* 457 U.S. at 380 n. 11, 102 S.Ct. at 2492 n. 11. The prosecutor admitted that he brought a superseding indictment in part because he did not wish to try the two arson offenses separately. Were this the only reason, we might have a different case.

The government, however, has also advanced another reason. Before the first motion for severance was granted, Oliver had pled guilty and given the government a statement describing a single, larger conspiracy than the government had known when bringing the original indictment. At oral argument before the magistrate judge, the prosecutor stated he would have sought a superseding indictment, whether or not the original indictment was severed. The magistrate judge relied on this statement in finding that the government was well within its discretion to seek a superseding indictment in order to present to the grand jury this new information. Because the magistrate judge was in a better position than we to assess the prosecutor's credibility, we decline to hold that this second reason was a *post hoc* justification.

Finally, a defendant seeking to overturn a denial of a severance motion must show that he was "so severely prejudiced by a joint trial that it would in effect deny him a fair trial." *United States v. Burke,* 700 F.2d 70, 83 (2d Cir.) (quoting *United States v. Rucker,* 586 F.2d 899, 902 (2d Cir.1978)), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983). Sicurella has made no such showing of prejudice in his brief, nor can we find any in the record.

Accordingly, the district court did not err in refusing to sever the second superseding indictment.

### E. *Sufficiency of the Evidence*

Lastly, Sicurella argues that the evidence does not support a finding that he burned his own car for insurance purposes. We disagree.

 A defendant bears a "heavy burden" in challenging his conviction on grounds of insufficiency. *United States v. Medina,* 32 F.3d 40, 43 (2d Cir.1994). The evidence must be viewed in the light most favorable to the government, "drawing all reasonable inferences and resolving all issues of credibility in its favor." *Id.* If the evidence suffices to convince any rational trier of fact beyond a reasonable doubt, then the conviction must stand. *United States v. Resto,* 824 F.2d 210, 212 (2d Cir.1987).

In taped conversations with the FBI informant, Sicurella admitted that he had his car "done." He told the informant how to report his car as missing and how to make the insurance claim. In addition, the jury heard testimony that Sicurella's car had a major mechanical problem, supplying the motive for the arson. Finally, there was proof that the front seat and dashboard areas of both the government Buick and Sicurella's car were torched in such a way as to suggest that the same person burned both cars. Since a jury verdict may rest on circumstantial evidence, *see United States v. Libera,* 989 F.2d 596, 601 (2d Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993), the proof that Sicurella had his own car burned for insurance purposes was more than sufficient.

## CONCLUSION

We have reviewed all the arguments raised on appeal, and conclude that they lack merit. We therefore affirm the judgment of conviction and the order dismissing Count Five of the second superseding indictment.