**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard Paul COATES, Jr.,
Defendant–Appellant.**

No. 90–5814.

United States Court of Appeals,
Fourth Circuit.

Argued July 11, 1991.

Decided Oct. 30, 1991.

Don Edward Ansell, Don Edward Ansell & Associates, Upper Marlboro, Md., argued (Donna L. Seeley, on brief), for defendant-appellant.

Ethan L. Bauman, Asst. U.S. Atty., Baltimore, Md., argued (Breckinridge L. Willcox, U.S. Atty., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, and
PHILLIPS and SPROUSE, Circuit Judges.

### OPINION

PHILLIPS, Circuit Judge:

This appeal requires us to determine whether the government can prosecute a person for arranging a murder-for-hire through the use of interstate commerce facilities, where the only basis for federal jurisdiction derives from actions the government admits were undertaken by its

agents solely to manufacture jurisdiction. We hold that on the facts of this case, such actions cannot provide a basis for jurisdiction.

## I

Because of a conflict between his mother and a step-brother about the inheritance of land in Charles County, Maryland, Richard Paul Coates decided that he wanted to have his step-brother killed. For that reason, Coates called Julian York to arrange a murder-for-hire. York, however, turned out to be a federal informer, and York alerted county detectives to Coates' scheme. The county detectives in turn notified federal agents, and the county and federal agents decided to work together to ensnare Coates.

As part of their plan, a county detective was introduced to Coates as York's friend who would do the actual killing. The plotting and scheming among Coates, the detective, and York then went on for some time. As Coates' interest in the killing seemed to flag, the agent and York renewed it. Finally, it was settled that Coates would make a bomb and the agent would deliver it to the target. While Coates was making the bomb, the agent needed an excuse to explain his absence because of the demands of another investigation, so he told Coates that he had to go to Kentucky. Coates asked the agent to pick up some blasting caps for the bomb while he was there. The Kentucky trip, however, was just a ruse and the agent never went there. Instead, he made a much shorter trip in order to place an interstate phone call.

Knowing that they needed a jurisdictional basis on which to prosecute Coates for a federal crime, York and the agent went just over the Maryland line into Virginia, concededly for the sole purpose of making an interstate telephone call to Coates. Once in Virginia, the agent called Coates in Maryland and discussed with him the details of the bomb and the murder scheme.

After the phone call the murder-for-hire agreement with Coates had one final hitch: Coates' inability to pay. The agent, apparently anxious to close the deal, agreed to give Coates "credit" and be repaid in monthly installments. Once Coates executed the promissory note, he was arrested.

Coates was then charged in a two-count indictment: in Count One, with violating 18 U.S.C. § 1958 (arranging murder-for-hire through interstate commerce facility), and in Count Two, with violating 26 U.S.C. § 5861(d) (possession of an unregistered firearm).

Coates was convicted on both counts after a one-day bench trial. At the conclusion of the government's evidence and at the end of trial, Coates moved for dismissal of Count One of the indictment for want of jurisdiction, due to the "manufactured jurisdiction" under which he was prosecuted on that Count. The district court, though expressing misgivings, denied the motion. This appeal followed. On it, Coates only challenges the district court's denial of his motions for dismissal of Count One for want of jurisdiction.

## II

18 U.S.C. § 1958 makes it a federal crime to "use[] ... any facility in interstate ... commerce, with intent that a murder be committed ... as consideration for a promise ... to pay, anything of pecuniary value....." The statute defines "facility of interstate commerce" to include interstate telephone service. § 1958(b)(2). Consequently, to indict for violating § 1958, the government must show that the person charged used interstate telephone service or other commerce facilities with the requisite intent.

In this case, despite a month of following Coates and using eavesdropping equipment, the government had no evidence of his use of interstate mail or wire facilities in connection with the murder-for-hire scheme. To cure this problem, the government agent drove to Virginia for the sole purpose of making a telephone call across state lines in order to induce Coates to "use" that interstate facility to discuss the scheme.

Coates contends that such "manufactured jurisdiction" cannot form the basis for a federal prosecution. We agree.

Consideration of this admittedly sensitive question properly may start with the Second Circuit's influential 1973 decision in *United States v. Archer*, 486 F.2d 670 (2d Cir.1973). In that case, the court dismissed an indictment under the Travel Act, which is directly analogous to § 1958, in part because the telephone calls involved were "manufactured by the Government for the precise purpose of transforming a local ... offense into a federal crime." *Id.* at 681. Judge Friendly wrote for the court that in enacting the Travel Act and related legislation federalizing certain criminal conduct on the basis of its interstate connections, Congress "did not mean to include cases where the federal officers themselves supplied the interstate element and acted to ensure that an interstate element would be present." *Id.* at 682. He added, "Manufactured federal jurisdiction is even more offensive in criminal than in civil proceedings." *Id.*

Relying in part on *Archer's* view that federal jurisdiction so patently contrived by government action should not be recognized in criminal prosecutions, we recently reversed a conviction under the Hobbs Act where the government had provided the sole "effect upon commerce" required to create federal jurisdiction. *See United States v. Brantley*, 777 F.2d 159 (4th Cir. 1985). In that case, where the only involvement of interstate commerce lay in the FBI's moving of gambling machines, liquor and money to South Carolina to establish a phony gambling parlor, Judge Haynsworth, writing for the court, opined that "federal agents may not manufacture jurisdiction by contrived and pretensive means." *Id.* at 163.

Earlier, the Fifth Circuit had expressed a similar view that federal jurisdiction in criminal prosecutions should not be recognized when patently contrived by means adopted solely for the purpose of creating a federal crime, opining that federal courts were therefore under obligation to "scrutinize the government's apparent reasons for its actions" whenever such a jurisdictional ploy was suggested. *United States v. Garrett*, 716 F.2d 257, 263 (5th Cir.1983). Going further, the *Garrett* court, exercising its supervisory jurisdiction, flatly "for[bade] the government agent's movement out-of-state for the sole purpose of manufacturing Travel Act jurisdiction." 716 F.2d at 264.

Focussing, as we did in *Brantley* and as the Fifth Circuit did in *Garrett*, upon the government's *reasons* for taking the action upon which federal jurisdiction is asserted, there is no doubt here that, by the government's candid admission, it was solely to create a federal crime out of a state crime. Consistent with our views in *Brantley* and with those of our sister circuits in *Archer* and *Garrett*, we therefore hold that Count One of the indictment here was not based upon cognizable federal jurisdiction and should have been dismissed.

In doing so, we emphasize the narrowness of our holding. We do not rely to any extent upon any notion that the telephone call was too incidental to the charged offense to support jurisdiction. *See United States v. LeFaivre*, 507 F.2d 1288 (4th Cir. 1974) (incidental nature of jurisdictional fact essentially irrelevant to the jurisdictional question). We rely entirely on the fact that the *only* reason the sole jurisdictional link occurred here was that it was contrived by the government for that reason alone. *See Brantley*, 777 F.2d at 163.

### III

We reverse the judgment of conviction on Count One and remand with directions to dismiss that count for lack of federal jurisdiction. Because the district court's judgment imposed a single overall sentence of imprisonment with respect to both counts rather than distinct sentences as to each, upon remand the defendant shall be resentenced for his conviction on Count Two alone.

*SO ORDERED.*