**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Reuben F. CLARK, Defendant–Appellant.**

**No. 94–10798.**

United States Court of Appeals, Fifth Circuit.

Aug. 11, 1995.

Timothy Crooks, Asst. Federal Public Defender, Ira Kirkendoll, Federal Public Defender, Ft. Worth, TX, for appellant.

Christopher A. Curtis, Asst. U.S. Atty., Paul E. Coggins, U.S. Atty., Ft. Worth, TX, for appellee.

Before HIGGINBOTHAM and PARKER, Circuit Judges, and McBRYDE,[1] District Judge.

McBRYDE, District Judge:

Reuben F. Clark, appellant, ("Clark") was convicted on pleas of guilty to (1) count 1 of the indictment, charging him with conspiracy under 18 U.S.C. § 371 to commit the offenses of interstate transportation of stolen motor vehicles in violation of 28 U.S.C. § 2312[2] and possession and disposition of stolen motor vehicles in violation of 18 U.S.C. § 2313,[3] and (2) counts 4, 6, 18, and 20, charging him with interstate transportation of stolen motor vehicles in violation of 18 U.S.C. § 2312.[4] Under the authority of Fed.R.Crim.P. 11(a)(1), his pleas of guilty were conditional, with a reservation by him of the right on appeal from his judgment of conviction to seek review of the district court's adverse determination on his motion to dismiss the indictment. The opinion of the district court is reported at *United States v. Clark*, 844 F.Supp. 1143 (N.D.Tex.1994).

We affirm.

The issue, as defined by Clark, presented for review by this court is whether the government artificially manufactured federal jurisdiction in this case, in violation of due process, the Commerce Clause, the Tenth Amendment, and general principles of federalism, so that there was no proper federal jurisdiction. Clark does not deny that all elements of the offenses of conviction exist. His complaint is that the interstate commerce and crossing-a-state-boundary elements are present only because an undercover agent for the government requested that he transport the stolen vehicles from Texas to a location in Oklahoma for disposition, but he does not deny that he willfully and voluntarily complied with the agent's request. Clark maintains that by the conduct of which he complains the government improperly manufactured federal jurisdiction. The government does not dispute Clark's claim that he was caused by the request of a government agent to deliver the stolen vehicles from Texas to Oklahoma for disposition; but, the government points out that Clark is the one who actually transported the vehicles across a state boundary and that he did so voluntarily. A fair inference to be drawn from the record is that the requirement of the government agent that the vehicles be transported from Texas to Oklahoma for disposition had as its sole purpose the satisfaction of the interstate elements of the offenses.

As has been true in other cases in which the complaint was made that federal jurisdiction was manufactured, Clark begins his

---

1. District Judge of the Northern District of Texas, sitting by designation.

2. Title 18 U.S.C. § 2312 reads:

Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined under this title or imprisoned not more than 10 years, or both.

3. Title 18 U.S.C. § 2313 reads:

(a) Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, which has crossed a State or United States boundary after being stolen,

knowing the same to have been stolen, shall be fined under this title or imprisoned not more than 10 years, or both.

(b) For purposes of this section, the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States.

4. The remaining counts of the twenty-three count indictment, which charged Clark and others with specific transactions in violation of either 18 U.S.C. § 2312 or 18 U.S.C. § 2313, were dismissed as to Clark at sentencing pursuant to a plea agreement between Clark and the government.

analysis by a reference to the opinion of the Second Circuit in *United States v. Archer*, 486 F.2d 670 (2d Cir.), on denial of reh'g, 486 F.2d at 683 (1973). *Archer* involved charges brought under the Travel Act, 18 U.S.C. § 1952.[5] In support of its contention in *Archer* that the interstate nexus required by the Travel Act existed, the government relied on evidence that the *Archer* defendants communicated concerning the offense conduct over interstate and international telephone calls, some of which were placed by a government agent for the sole purpose of creating an interstate nexus, one of which was placed by a defendant in response to an agent's call, and one of which was placed by a government agent who happened to be out of the country on business unrelated to the Travel Act case when the call was placed. Though the court wrote at length about what it perceived to be the reprehensible nature of the activities of agents of the government, in the final analysis the holding turned on the conclusion of the court that the telephone calls did not constitute sufficient evidence to show a violation of, or a conspiracy to violate, the Travel Act.[6] *Id.* at 682–83.

This court has dealt with an *Archer*-type issue on three occasions.

In *United States v. Perrin*, 580 F.2d 730 (5th Cir.1978), *aff'd*, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979), which was an appeal from convictions under the Travel Act, the defendants maintained that federal jurisdiction was improperly manufactured by the government, acting through its undercover agents. In the course of distinguishing *Archer* from the case being decided, the court noted the difference between a case where the undercover agent, at the behest of the government, unilaterally supplies the interstate element and one where the evidence establishes that the complaining defendant knowingly participated in the activity that satisfied that element. *Id.* at 736. The court explained:

> This is not to say, however, that [the government informer] at the behest of the government could unilaterally supply the interstate element to a local bribery scheme and thereby transform the bribery scheme into a Travel Act violation. For example, [the agent] could not at the government's direction cross the Sabine River merely to call one of the co-conspirators in New Orleans, Louisiana.

*Id.* But, the court ruled against the defendants because the evidence made clear that one of them played a significant role in causing the interstate element to exist. *Id.*

Next, in *United States v. Pecora*, 693 F.2d 421 (5th Cir.1982), *cert. denied*, 462 U.S. 1119, 103 S.Ct. 3087, 77 L.Ed.2d 1348 (1983), the court was asked on the basis of *Archer* to hold that federal jurisdiction did not exist as to offenses alleged under the Travel Act or the wire fraud statute, 18 U.S.C. § 1343.

**5.** Title 18 U.S.C. § 1952 reads in pertinent part: (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform—

(A) an act described in paragraph (1) or (3) shall be fined under this title, imprisoned not more than 5 years, or both; or

(B) an act described in paragraph (2) shall be fined under this title, imprisoned for not more than 20 years, or both, and if death results shall be imprisoned for any term of years or for life.

**6.** An explanation the Second Circuit gave on motion for rehearing creates uncertainty as to the meaning of the language the court used in the main opinion; but, the rehearing language makes clear that the holding of the Second Circuit was intended to have a narrow effect:

> While the Government professes alarm at the precedential effect of our decision, we in fact went no further than to hold that when the federal element in a prosecution under the Travel Act is furnished solely by undercover agents, a stricter standard is applicable than when the interstate or foreign activities are those of the defendants themselves and that this was not met here. We adhere to that holding and leave the task of further line-drawing to the future.

*United States v. Archer*, 486 F.2d 670, 683, 685–86 (2d Cir.1973).

Again, the federal jurisdiction issue turned on whether a long-distance telephone call should be allowed to satisfy the interstate elements of the offenses. The court held that, under the facts before it, the interstate telephone call was enough, citing *Perrin* and *United States v. Jones*, 642 F.2d 909 (5th Cir.1981). The court distinguished the facts in the case before it from the *Archer* facts by pointing out that "[u]nlike *Archer*, the interstate element of this case was not furnished solely by undercover agents and there is no question of any attempt to contrive jurisdiction." *Pecora*, 693 F.2d at 424.

A claim of error in a Travel Act conviction based on the opinion in *Archer* was most recently before the court in *United States v. Garrett*, 716 F.2d 257 (5th Cir.1983), *cert. denied*, 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984). At the heart of the controversy was a long-distance telephone call that the government contended satisfied the interstate element of the offense. The court concluded that the government agents did not place themselves outside the state where the other elements of the criminal offense were occurring solely for the purpose of contriving an interstate nexus. *Id.* at 267. That fact, combined with the fact that the defendant was aware of the interstate nature of the undercover agents' activities when he placed the telephone call to the agents' out-of-state location, was "sufficient to show that the interstate element was not *solely* furnished by government agents and that the government did not attempt to contrive jurisdiction." *Id.* The court concluded that the interstate nexus was not artificially created to invoke jurisdiction and did not infringe the standards of *Perrin* and *Pecora*. *Id.* at 268. The *Garrett* opinion left open the possibility that the interstate element of the Travel Act could be found to have been unacceptably manufactured if there was evidence that the agents took steps to cause an interstate telephone call to be made "solely for the purpose

of contriving an interstate nexus." *Id.* at 267. The court explained:

> *Pecora* and *Perrin* thus do not expressly adopt or reject the *Archer* "stricter standard" for testing the sufficiency of an interstate nexus involving government agents. In instances when the interstate nexus is furnished by a telephone call to a government agent, these decisions do, however, require the court to scrutinize the government's apparent reasons for its actions and forbid the government agent's movement out-of-state for the sole purpose of manufacturing Travel Act jurisdiction.

*Id.*

The decision of the Fourth Circuit in *United States v. Coates*, 949 F.2d 104 (4th Cir. 1991), upon which Clark relies, parallels *Archer*. The indictment charged the defendant with a violation of 18 U.S.C. § 1958, which is a sister statute to the Travel Act. Section 1958 makes unlawful the use of any facility in interstate commerce, including interstate telephone services, with the intent that a murder be committed for hire. Using the words of the Fourth Circuit, "[c]onsequently, to indict for violating § 1958, the government must show that the person charged used interstate telephone service or other commerce facilities with the requisite intent." *Id.* at 105. There was no interstate nexus in *Coates* except one telephone call, which was placed by a government agent who had traveled across the state boundary "concededly for the sole purpose of making an interstate telephone call to Coates." *Id.* Apparently Coates was not even aware of the location from which the agent was calling, though Coates did have reason to think that the agent could be located in another state. *Coates* could have been decided, as *Archer* was, on the basis that, as a matter of law, the evidence failed to establish that Coates used interstate telephone services with the requisite intent.[7] The fact that the Fourth Circuit chose to discuss its reversal in terms of a

---

7. The court questions whether "manufactured federal jurisdiction" should even be recognized as a separate defense theory. There are cases, such as *Archer* and *Coates*, where the interstate element of the offense simply does not exist because of questioned conduct of a government agent. And, there are cases, such as the present

one, where, if the case had been tried, the conduct of a government agent might have raised the defense of entrapment. Perhaps, for clarity of analysis, all cases presented under the "manufactured federal jurisdiction" label should be dealt with on one of those bases.

"sole jurisdictional link" that "was contrived by the government for that reason alone," *id.* at 106, does not change the basic nature of the case. Moreover, there is a critical distinction between the *Coates* facts and the facts in the present case. Here, Clark transported the vehicles across a state boundary—Coates did not make the interstate telephone call.

In *United States v. Peters,* 952 F.2d 960 (7th Cir.1991) *cert. denied,* 503 U.S. 911, 112 S.Ct. 1277, 117 L.Ed.2d 503 (1992), the Seventh Circuit dealt with the manufactured federal jurisdiction concept in the context of a conviction for the offense of transporting a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. § 2312. There, the court held that the concept did not apply to the facts before the court. In doing so, the court considered important that the defendant was the one who drove the stolen vehicle across a state boundary, with the consequence that the federal element necessary for jurisdiction was not furnished solely by undercover agents. *Id.* at 963–64. However, *Peters* is factually distinguishable from the present case. The government agents in *Peters* had more than one reason for using the out-of-state location to which the defendant transported the stolen vehicle, with the consequence that there was no basis for a contention that the sole purpose of the requirement that the vehicle be transported across a state boundary was to satisfy the interstate element of the offense. *Id.* at 964. Here, the sole purpose of the requirement of the government agent that the vehicles be transported to Oklahoma for disposition was to cause the interstate elements of the offenses to exist.

This case does not fit neatly within the framework of any of the cases discussed above. Clark does not dispute that he is guilty of the offenses of conviction. This is to be contrasted with the contentions made by the defendants in *Archer* and its progeny that the roles played by the government agents caused there not to be an offense of a kind contemplated by the Travel Act. Clark's request for dismissal was in the nature of a confession and avoidance. He, in

effect, confessed that he committed the crimes of which he was charged, but by his motion to dismiss he sought avoidance of his criminal conduct by his theory that the interstate elements of his offenses were manufactured by the agent. Language contained in the opinions discussed above suggests that if the government agent took action for the sole purpose of causing the interstate element to exist, dismissal of the indictment could be appropriate. However, none of the cases discussed has decided the precise issue now before the court, *i.e.,* whether, in a case in which the elements of the offense admittedly exist, an indictment should be dismissed if the facts are that (1) a government agent took steps to ensure the existence of the interstate element of the offense, (2) satisfaction of the interstate element was the sole reason for the taking of those steps, but (3) the defendant voluntarily and of his own free will did the act that caused the interstate element to exist.

As in *United States v. Lau Tung Lam* where the government had "an entirely legitimate interest in identifying and apprehending European drug dealers willing to bring narcotics to this country for sale," 714 F.2d 209, 210 (2d Cir.), *cert. denied,* 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 322 (1983), in the present case the government had a legitimate interest in identifying and apprehending car thieves who are willing to steal cars in one state and transport them to another for disposition. The fact that a government agent took steps to ensure the existence of the interstate element of the offense and the fact that satisfaction of the interstate element was the sole reason for the taking of those steps do not cause the indictment to be subject to dismissal. Thus, if a "manufactured federal jurisdiction" concept has a place in federal criminal law, it has no place in this case.

We hold that the government did not improperly manufacture federal jurisdiction in this case, that there is proper federal jurisdiction, and that, therefore, the district court

did not err in denying Clark's motion to dismiss the indictment.[8]

AFFIRMED.

---

**8.** The court's holding that the government did not improperly manufacture federal jurisdiction resolves against Clark his subsidiary contentions that the conduct of the government violated due process, the Commerce Clause, the Tenth Amendment, and general principles of federalism.