**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 97-4277

KOREY RALEIGH HUDSPETH,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
J. Calvitt Clarke, Jr., Senior District Judge.
(CR-96-66-A)

Submitted: August 25, 1998

Decided: September 9, 1998

Before WILLIAMS and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William B. Moffitt, ASBILL, JUNKIN & MOFFITT, CHTD., Wash-
ington, D.C., for Appellant. Helen F. Fahey, United States Attorney,
Jeffrey L. Berhold, Special Assistant United States Attorney, Alexan-
dria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Korey Raleigh Hudspeth appeals his convictions for possession with the intent to distribute cocaine base and distribution of cocaine base in violation of 18 U.S.C. § 841(a)(1) (1994), for carrying a firearm during and in relation to his drug trafficking offenses in violation of 18 U.S.C. § 924(c) (1994), for witness tampering in violation of 18 U.S.C. § 1512(a)(1)(A), (C) (1994) and 18 U.S.C. § 2 (1994), for using a facility in interstate commerce with the intent to commit a crime of violence to further unlawful activity in violation of 18 U.S.C. § 1952 (1994) and § 2, for aiding and abetting another in interstate travel with the intent to commit a crime of violence to further unlawful activity in violation of 18 U.S.C. § 1952 and § 2, causing another to travel in interstate commerce with the intent that a murder for hire be committed in violation of 18 U.S.C. § 1958 (1994), and for using a facility in interstate commerce and causing another to travel in interstate commerce with the intent that a murder for hire be committed in violation of § 1958. Finding no merit to his claims, we affirm.

On November 16, 1995, Darryl Nichols ("Nichols"), operating in an undercover capacity, was standing on a street corner in Falls Church, Virginia making preparations to make a controlled purchase of crack cocaine when Nellie Downing ("Downing") approached him. Nichols revealed that he was looking to buy $50 worth of crack cocaine. Downing responded that she knew someone with crack and took Nichols to a nearby apartment and introduced him to Hudspeth.

Although Hudspeth was suspicious that Nichols was a police officer he eventually sold him 0.226 grams of crack in exchange for $50. During this transaction, Nichols saw what he believed to be a semiautomatic handgun on Hudspeth's person. After the drug exchange, Nichols left the apartment and gave an arrest signal to the undercover arrest team and warned them that Hudspeth had a semiautomatic

2

handgun. Hudspeth then fled the scene and was eventually located and arrested approximately thirty minutes later. Although the police recovered Nichols' $50, another $740, a pager, and a magazine for a nine millimeter handgun, they were unable to locate the gun.

Following his arrest, Hudspeth sought assistance in selling the remaining crack he had in his apartment and killing Nichols so that Nichols would be unable to testify against him in his upcoming trial. A fellow prison inmate of Hudspeth's, Yusuf Salahuddin ("Salahuddin"), advised Hudspeth that his nephew, who was really an undercover DEA agent, Clyde Shelley ("Shelley"), would be interested in buying crack from him and could kill Nichols.

Thereafter Shelley began receiving calls from Hudspeth from the Fairfax County Detention Center. On several occasions, Hudspeth and Shelley spoke over the phone from the jail and in person at the jail regarding the murder. Hudspeth then gave Shelley a detailed description of Nichols and agreed to pay him $9000 to commit the murder. After Shelley advised Hudspeth that Nichols had been killed, Hudspeth continued to make arrangements to pay Shelley, but no payment was made. Based on these events Hudspeth was convicted and sentenced to 322 months' imprisonment.

On appeal Hudspeth asserts several insufficiency of evidence claims. To sustain a conviction, this court must find substantial evidence, when viewed in a light most favorable to the government, to support it. See Glasser v. United States, 315 U.S. 60, 80 (1942). Circumstantial as well as direct evidence is considered, and the government is given the benefit of all reasonable inferences from the facts proven to those sought to be established. See United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

Hudspeth's assertion that this court should reverse his conviction for carrying a firearm during and in relation to his drug trafficking offenses is unpersuasive. At trial Nichols testified that he saw Hudspeth with a nine-millimeter handgun during negotiations and during the completion of the drug deal in the apartment lobby. Members of the arrest team corroborated this story and testified that they heard Nichols give a warning about the gun at the end of the undercover buy. Officers also found a magazine for a nine millimeter handgun in

3

the laundry room that Hudspeth used as a base of operations for his drug business. Finally, Downing testified that she usually saw an imprint of a gun in Hudspeth's pants during drug sales. We find that this testimony was sufficient evidence from which a reasonable jury could have found Hudspeth guilty of carrying a firearm during and in relation to his drug related offenses in violation of § 924(c).

Hudspeth next contends that there was insufficient evidence to conclude that he attempted to kill Nichols with the intent to prevent him from testifying against him at trial in violation of the Witness Tampering Act under 18 U.S.C. § 1512(a)(1)(A), (C). Specifically Hudspeth contends that he did not attempt to kill Nichols and that even assuming he did, the proceeding was not an "official proceeding" before a "judge of the United States" for the purposes of § 1512.

Section 1512 prohibits "attempts to kill another person, with intent to . . . prevent the attendance or testimony of any person in an official proceeding . . . or . . . prevent the communication by any person to a . . . judge of the United States of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. § 1512 (1994). First, Hudspeth and Shelley formed an agreement to kill Nichols. Furthermore, Hudspeth gave Shelley a detailed description of Nichols and was persistent about calling Shelley and effectuating payment. Second, there was evidence adduced at trial that Hudspeth knew that federal drug charges might be brought against him which would be tried before a federal judge. See 18 U.S.C. § 1512(e) (1994) ("an official proceeding need not be pending or about to be instituted at the time of the offense."). More importantly, however, federal charges were brought and a federal trial did ensue. Accordingly, we find that there was sufficient evidence that showed Hudspeth attempted to kill Nichols to keep him from testifying and that there was an "official proceeding" before a "judge of the United States" for the purposes of § 1512.

Hudspeth's claim that there was insufficient evidence that his conduct gave rise to a Travel Act violation under § 1952 is also not convincing. Specifically, Hudspeth argues that he committed no overt act subsequent to his contacting and meeting Shelley that furthered his drug trafficking venture. He further claims that he did not engage in "unlawful activity" for the purposes of § 1952 and that the Govern-

4

ment failed to establish a sufficient federal nexus to warrant a conviction under § 1952.

For the Government to convict Hudspeth under § 1952, it was required to prove, beyond a reasonable doubt: (1) interstate travel, (2) intent to promote ongoing unlawful activity, i.e., drug trafficking, and (3) performance or attempted performance of an unlawful act. See United States v. Gallo, 782 F.2d 1191, 1194 (4th Cir. 1986); United States v. Schocket, 753 F.2d 336, 340-41 (4th Cir. 1985). We have made clear that there must be some action taken after using the interstate facility to establish a § 1952 violation. See United States v. Porter, 821 F.2d 968, 975 (4th Cir. 1987). The overt act requirement can be satisfied by the performance or attempted performance of any crime of violence to further any unlawful activity. See 18 U.S.C. § 1952(a)(2) (1994). Because the evidence at trial revealed that Hudspeth made a series of interstate phone calls from the jail to Shelley in Washington, D.C. and that he met with Shelley at the jail regarding the murder scheme, there was sufficient evidence that Hudspeth used the phone with the intent to commit a murder to further his drug trafficking business.

We also find sufficient evidence that Hudspeth engaged in "unlawful activity" for the purposes of § 1952. Unlawful activity includes "any business enterprise involving . . . narcotics or controlled substances." 18 U.S.C. § 1952(b)(1) (1994). This court has construed "business enterprise" to mean "a continuous course of conduct." See United States v. Corbin, 662 F.2d 1066, 1072 (4th Cir. 1981). Here, the evidence at trial demonstrated that Hudspeth had been engaged in a continuous course of dealing crack cocaine on a regular basis for at least five months, and thus, Hudspeth had engaged in an "unlawful activity."

Finally, the underlying business enterprise was interstate in nature and there was a sufficient federal nexus to warrant a conviction under the Travel Act. Hudspeth used the jail phone to make interstate phone calls and caused Shelley to travel interstate for the purpose of plotting and executing a scheme to kill the principal witness against him for his drug offenses. See United States v. LeFaivre , 507 F.2d 1288, 1296 (4th Cir. 1974) (holding that the travel or use of facilities need not be

5

substantial). Hence the Government adequately established a violation of the Travel Act.

Hudspeth next claims that he was erroneously convicted of using and causing another to travel in interstate commerce with the intent to commit a murder for hire under § 1958 because the required interstate nexus and federal action arose out of "mere happenstance." Again, because the evidence at trial revealed that Hudspeth used the interstate telephone service from the jail with the intent to have Shelley murder Nichols, we hold that a federal action under § 1958 did not arise out of "mere happenstance" and this claim is without merit. See United States v. Coates, 949 F.2d 104, 106 (4th Cir. 1991) (citing LeFaivre, 507 F.2d at 1288) (noting that the incidental nature of the jurisdictional fact is essentially irrelevant to the jurisdictional question)).

Hudspeth further suggests that there was insufficient evidence to find that he intended to have Nichols murdered because he was a chronic liar who never really intended that Nichols be murdered and who never really intended to pay Shelley. On the contrary, the evidence established that Hudspeth was completely aware that Shelley intended to kill Nichols; in fact, Hudspeth, himself, made the arrangements to have Nichols killed. Furthermore, the evidence revealed that Nichols took the threat very seriously and never once considered Hudspeth's threat to be frivolous in nature. Lastly, even when it appeared that Nichols was killed, Hudspeth never recanted his intent or his promise to pay Shelley. Consequently, we find this claim meritless.

Finally, Hudspeth's assertion that the sentence he received for possession with intent to distribute cocaine base and distribution of cocaine base in violation of § 841 was disproportionate to the crime and therefore a violation of the Eight Amendment's prohibition against cruel and unusual punishment is not convincing. Because this issue was not raised in the district court, we review for plain error. See United States v. Olano, 507 U.S. 725, 732-36 (1993).

Hudspeth contends that the district court erred in determining that he was responsible for at least 119.8 grams of cocaine base. See U.S. Sentencing Guidelines Manual § 1B1.3 (relevant conduct). However,

there was testimony that Hudspeth sold 200 grams of cocaine just five months before he was arrested. Consequently, based on the nature of the offense, the circumstances of the offense, and Hudspeth's criminal history, the court found a sentencing range of 210 to 262 months and sentenced him to 240 months' imprisonment for his § 841 convictions.

Because the sentence was within the sentencing guidelines' range and Hudspeth claims no error in the application of the guidelines, the court did not commit plain error and his sentence does not violate the Eighth Amendment. See United States v. Jones, 18 F.3d 1145, 1151 (4th Cir. 1994); see also United States v. Francois, 889 F.2d 1341, 1343 (4th Cir. 1989) (finding that sentence within range provided by the guidelines does not violate Eighth Amendment).

Accordingly, we affirm Hudspeth's convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7